IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUONY ROUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number 1:06CV00112 |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF SCOTT A. KOCH
### INFORMATION AND PRIVACY COORDINATOR
### CENTRAL INTELLIGENCE AGENCY

I, SCOTT A. KOCH, hereby declare and say:

1. I am the Chief, Public Information Programs Division (PIPD), Information Management Services (IMS), within the Information Services Center, Directorate of Support, Central Intelligence Agency (CIA). I serve as the CIA Information and Privacy Coordinator (Coordinator). I have held these positions since 9 August 2004. I make this declaration in support of CIA's motion for summary judgment filed in this proceeding.

2. I have served with the United States Government for approximately fifteen years and, in addition to my current positions, have held other supervisory positions with the


GOVERNMENT EXHIBIT

CIA in the fields of records management and information review and release.

3. In my capacities as Chief of PIPD/IMS and Coordinator, I am responsible for managing the Freedom of Information Act (FOIA), Privacy Act, and Executive Order 12958[1] Mandatory Declassification Review programs in the CIA. These responsibilities include directing searches of CIA records systems pursuant to public requests for records under these programs, and coordinating the reviews of any records retrieved in such searches. These review processes include undertaking any intra-agency and inter-agency coordination and referrals necessary in light of the information found in responsive records.[2]

4. As part of my official duties, I ensure that the Agency administratively processes FOIA and Privacy Act requests, including the search, retrieval, analysis, review, redaction, and release of documents, in accordance

---

[1] Executive Order 12958 was amended by Executive Order 13292. See Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003). All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292. See Exec. Order No. 12,958, 3 C.F.R. 333 (1995), reprinted as amended in 50 U.S.C.A. § 435 note at 165 (Supp. 2005).

[2] A "coordination" occurs when a CIA-originated document contains information from another agency, and the CIA contacts that agency to obtain guidance on whether to release or withhold that agency's information. A "referral" occurs when CIA possesses a document that originated with another agency. In such a case, CIA transmits the document to the originating agency for a direct response to the FOIA or Privacy Act requestor.

2

with the law and as efficiently as possible with the personnel and resources available.

5. Through the exercise of my official duties, I am familiar with this civil action. I make the following statements based upon my personal knowledge and the information made available to me in my official capacity.

6. This declaration describes CIA's records systems, its procedures for responding to FOIA/Privacy Act requests, and actions the Agency took in responding to Plaintiff's FOIA/Privacy Act request.[3]

## I. CIA RECORDS SYSTEMS

7. Any intelligence or security agency continually faces the risk that there may be a spy within its ranks. Prudence dictates that an agency take appropriate counterintelligence and security precautions to minimize the potential damage to national security that could result from a spy in the agency's midst. One way to minimize such damage is strictly to limit the amount of information to which any particular employee has access.

8. CIA limits employee access to information by employing a "need-to-know" policy, which provides that an

---

[3] The Plaintiff submitted a written request for all records on himself. It is Agency policy to process all such requests under both the FOIA and the Privacy Act in order to ensure the maximum possible disclosure to the requester. See 32 C.F.R. 1901.21(a).

3

employee has access only to that information required to perform the employee's duties. CIA implements this policy through decentralizing and compartmenting its records systems.

9. While the counterintelligence advantage of this practice is obvious, one disadvantage is equally obvious: the inherent inefficiencies created in the records search and retrieval processes. These inefficiencies affect not only the day-to-day activities of CIA employees trying to perform their mission, but also the process of responding to FOIA/Privacy Act requests.

## II. PROCESSING OF FOIA/PRIVACY ACT REQUESTS

10. The Coordinator is the initial reception point for all FOIA/Privacy Act requests made to the CIA. Under the direction and supervision of the Coordinator, experienced IMS information management professionals analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request. IMS then transmits a copy of the request to each relevant component. When a request is broad, it is quite common for IMS to transmit the request to many components. Because CIA's records systems are decentralized and compartmented, each component must then devise its own search strategy, which includes identifying

4

which of its records systems to search as well as what search tools, indices, and terms to employ. The information management professionals in each component conducting FOIA/Privacy Act searches are the same professionals searching records to support the component's daily mission.

11. If a tasked component locates documents in response to the FOIA/Privacy Act request, officers must review the documents to determine whether they are responsive to the request. Because of the nature of a particular records system, or the search tools, indices, or terms employed, a search may locate many documents that are not responsive to the request.

12. After officers remove the non-responsive documents, the Information Review Officers must then review the remaining documents to determine which, if any, FOIA and Privacy Act exemptions apply, and whether they can reasonably segregate non-exempt information from exempt information. In evaluating responsive documents, officers must segregate exempt information to avoid the inadvertent disclosure of classified information, information concerning intelligence sources and methods, or other information protected by FOIA and Privacy Act exemptions. This process is laborious and time-consuming.

13. In the course of reviewing documents for exempt information and segregability, a component frequently identifies information that it must coordinate with or refer to another CIA component or another agency because the other component or agency originated the information or otherwise has an equity in it.[4] This coordination and referral process itself can be quite time-consuming because other components and agencies have their own mission and FOIA/Privacy Act priorities.

14. When all of the components and agencies complete their respective reviews, IMS professionals, under my direction and supervision, incorporate all of their recommendations regarding exemption, segregation, redaction, and release. These IMS professionals then conduct a review from a corporate perspective on behalf of the entire CIA. In this review, IMS professionals resolve conflicting recommendations, ensure that the release or withholding determinations comply with law and published CIA regulations, identify additional exempt information that reflects overall CIA equities, ultimately produce the integrated final record copy of each document, and respond to the requestor.

---

[4] See Exec. Order No. 12958 § 3.6(b).

15. In response to a broad FOIA/Privacy Act request, the searches may locate many documents in many components. When considered individually, a particular document may not indicate on its face that it contains exempt information. Nevertheless, when reviewers consider all responsive documents in total, it frequently becomes apparent that, considered collectively, the documents reveal information exempt from release. For this reason, we cannot make final release determinations with respect to any particular document until we review all responsive documents. In certain instances, the Coordinator may withhold additional information whenever it is necessary to apply FOIA and Privacy Act exemptions to protect overall CIA equities.

### III. PLAINTIFF'S FOIA/PRIVACY ACT REQUEST

16. Plaintiff submitted by first class mail a written FOIA/Privacy Act request dated 11 November 2005 that was received by CIA on 14 December 2005. In his request, Plaintiff asked for information in his "CIA files." A true and correct copy of Plaintiff's 11 November 2005 letter is attached as Exhibit A. CIA assigned Plaintiff's request reference number P-2006-00109.

17. By letter dated 21 December 2005, CIA acknowledged receiving Plaintiff's 11 November 2005 letter

7

and indicated that Plaintiff's request had been interpreted as a request for records about Plaintiff. CIA further informed Plaintiff that his letter could not be processed until he provided a statement with his full legal name, address, date and place of birth, and citizenship status as required by the CIA's Privacy regulations, contained in 32 C.F.R. § 1901.13. A true and correct copy of CIA's 21 December 2005 letter is attached as Exhibit B.

18. By letter dated 30 December 2005, sent by first class mail, Plaintiff provided the information required to process his request. CIA received this letter on 19 January 2006. A true and correct copy of Plaintiff's 30 December 2005 letter is attached as Exhibit C.

19. By letter sent by first class mail and dated 20 January 2006, the day after CIA received the biographical information required to process Plaintiff's request, CIA acknowledged the receipt of the additional information and accepted Plaintiff's request for processing. A true and correct copy of CIA's 20 January 2006 letter is attached as Exhibit D.

20. The CIA processed Plaintiff's request in accordance with the procedure described in Section II of this Declaration. IMS sent Plaintiff's request to all appropriate directorates within CIA, with instructions to

8

conduct searches of all record systems that are searchable by name or other personal identifier provided by Plaintiff, and that might reasonably contain any records about the Plaintiff. The directorates conducted diligent searches of relevant systems of records that were reasonably calculated to discover any records responsive to Plaintiff's 11 November 2005 request. Diligent searches failed to disclose any records responsive to Plaintiff's request.

21. By letter dated 31 January 2006, CIA notified Plaintiff that it had conducted a thorough and diligent search for records responsive to his request, in accordance with the Freedom of Information Act and Privacy Act. CIA further informed Plaintiff that it found no records responsive to Plaintiff's request. CIA also informed Plaintiff that he had 45 days to exercise his right to appeal the finding to the Agency Release Panel. A true and correct copy of CIA's 31 January 2006 letter is attached as Exhibit E.

22. Although only one day had passed since CIA received Plaintiff's letter perfecting his request by providing the required biographical information, Plaintiff filed his complaint initiating this litigation on 20 January 2006. In other words, Plaintiff filed his

9

complaint a full nineteen days before the expiration of the twenty-day period afforded the CIA to respond.

23. At no time did Plaintiff ever appeal to the Agency Release Panel as described to him in CIA's 31 January 2006 letter. CIA has not received an administrative appeal or any further correspondence from Plaintiff after his 30 December 2005 letter.

* * * *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of April, 2006.

_____
Scott A. Koch, Ph.D.
Information and Privacy Coordinator
Central Intelligence Agency

P-2006-00109
Chris

## FREEDOM OF INFORMATION ACT AND PRIVACY ACT OF 1974 REQUEST LETTER

2005 DEC 14 PM

November 11, 2005

Porter J. Goss
Central Intelligence Agency
Office of Public Affairs
Washington, DC 20535

Dear Porter J. Goss,

I am placing this request under federal law Freedom of Information Act and Privacy Act of 1974.

I request a copy of any records specifically the ones labeled Al Qaeda, other terrorist, like minded groups, paranoid, medical records, all the records and other records containing U.S government secretive projects such as Electronic Harassment, MKULTRA, SLAMMER, CONTELPRO, Microwaves Harassment and other projects about me maintained at your agency.

Under above federal statues, I am entitled to know what is in my CIA files and also I have right to correct any erroneous mistakes in my files. I request a waiver of all fees for this request. Upon disclosure of the information to me I would like the public to know of your agency's activities since it is going be beneficial to the public. The information I requested, I would like to receive it in a printable electronic format CD-Rom disk.

I ask that my request receive expedited processing because my life is in danger because use of laser weapon, modified microwave oven, chemicals, radioactive chemicals on me and currently CIA/FBI sniper threats. I hope to hearing from you at no distance times.

Sincerely,

*[signature]*

Buony Benbil Roum
3336 MT Pleasant NW #5
Washington, DC 20010
(202) 468-4018

GOVERNMENT EXHIBIT A

P. 3

MORI DocID: 1276159



Central Intelligence Agency

Washington, D.C. 20505

21 December 2005

Mr. Buony B. Roum
3336 Mt. Pleasant NW #5
Washington, D.C. 20010

Reference: P-2006-00109

Dear Mr. Roum:

Your 11 November 2005 letter to Porter J. Goss, Office of Public Affairs, was forwarded to the CIA office of the Information and Privacy Coordinator for response. We received your letter in this office on 14 December 2005. We have interpreted your letter as a request for records on you. For identification purposes we have assigned your request the number referenced above.

The Privacy Act requires federal agencies to safeguard personally identifiable information about an individual. CIA's Privacy Regulations, Title 32 C.F.R. § 1901.13, establish the criteria below:

> An individual seeking access to or amendment of records about himself shall provide in the letter of request his full (legal) name, address, date and place of birth, and current citizenship status together with a statement that such information is true under penalty of perjury or a notarized statement swearing to or affirming his identity. In the case of an individual who is an alien lawfully admitted for permanent residence, said individual shall provide his or her alien registration number and the date that status was acquired.

You must send us a statement with this information before we process your request. You must have your statement notarized, or sign it under penalty of perjury (28 U.S.C. § 1746), and verify that you are a U.S. citizen or a legal permanent resident. If you are a legal permanent resident (LPR), you must provide your LPR number and the date that status was acquired. If you have become a U.S. citizen, you must provide your naturalization number and the date that status was acquired. You may submit any additional information you wish to help us ensure that our search is as comprehensive and accurate as possible.



GOVERNMENT
EXHIBIT
B

MORI DocID: 1276159

With regard to your request for expedited processing, I must inform you that all requests are handled in the order received on a "first-in, first-out" basis. Exceptions to this rule will only be made in circumstances that the Agency deems to be exceptional. In making this determination, the Agency shall consider and must decide in the affirmative on all of the following factors: (1) That there is a genuine need for the records; and (2) That the personal need is exceptional; and (3) That there are no alternative forums for the records sought; and (4) That it is reasonably believed that substantive records relevant to the stated needs may exist and be deemed releasable. In sum, requests shall be considered for expedited processing only when health, humanitarian, or due process considerations involving possible deprivation of life or liberty create circumstances of exceptional urgency and extraordinary need. Since your request does not meet the criteria, we must decline your request for expedited processing.

We will hold your request for 45 days from the date of this letter pending your reply and receipt of the required information. Please use the reference number above when communicating with us so that we can easily identify your request. If you would prefer to fax in the additional information, our fax number is 703-613-3007.

Sincerely,

*Chris K.*

Scott Koch
Information and Privacy Coordinator

MORI DocID: 1282246

# FREEDOM OF INFORMATION ACT AND PRIVACY ACT DENIAL ACCESS APPEAL LETTER

December 30, 2005

2005 JAN 19 PM 12:45

Porter J. Goss
Central Intelligence Agency
Office of Public Affairs
Washington, DC 20505

My dear Porter J. Goss,

Here is a denial access appeal letter hereunder Freedom of Information Act and Privacy Act of 1974.

On November 11th, 2005, I requested my records under Freedom of Information Act and Privacy Act of 1974. My request was assigned P-2006-00109 on December 21st, 2005 and received response letter signed by Chris R for Scott Koch Information and Privacy Coordinator. The response to Privacy letter dated 12/27/05 was received on 12/28/05 according to the postal stamp but the FOIA/Privacy Act which I sent to you on November 11th, 2005 was received on December 14th, 2005. How many days does it take locally within Washington, DC for a letter to arrive at its destination?

My full names are Buony Benbil Roum. My address shall be as below at the end of this letter. Date and place of birth: 12/31/1978, Sudan (Southern Sudan). Religion: Christian. Washington, DC social security number 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. Current citizenship: Naturalized American citizen A071666038 February 17th, 2005.

I totally disputed your claim that my FOIA/ Privacy Act request letter do not deserves expedited processing and is "first -in first -out". Your clandestine agents who live above me are using lanthanide and actinide chemicals against me as well as radiological thermal devices such microwaves, isotropic radiators, non-nuclear electromagnetic pulse generators (non-nuclear very miss leading), laser weapon, infrasonic and other high energy arsenals which are cancer or disease causing organisms. Now tell me that it is not a health concern or deprivation of life (without due process of law) and liberty. There was also sniper death threat made through coworker (informant) by your Agency's and FBI agents. I, m afraid time of luxury you don't have. You have only ten days from date of this letter 5 USC § 552a (d)(1)(A). I must receive the requested records on January 12th, 2006 by 5:00 P.M EST or 1700 military time or else.

I shall hear from you at no distance times.
Sincerely,

Buony Roum
3336 Mount Pleasant ST. NW #5
Washington, 20010
(202) 468-4018

GOVERNMENT EXHIBIT
C

The foregoing instrument was acknowledged before me this _____ day of December 2005 by Buony Roum known to me to be the person(s) whose name(s) are subscribed to within the instrument and acknowledged execution of the same for the purposes therein contained.

Notary Public, State/County of District of Columbia
My commission expires: 4/30/2010



Central Intelligence Agency

Washington, D.C. 20505

20 January 2006

Mr. Buony B. Roum
3336 Mt. Pleasant NW #5
Washington, D.C. 20010

Reference: P-2006-00109

Dear Mr. Roum:

Your 30 December 2005 letter to Porter J. Goss, Office of Public Affairs, was forwarded to the CIA office of the Information and Privacy Coordinator for response. It was received in this office on 19 January 2006. Your letter provided additional information pertaining to your Privacy Act request referenced above.

Since you have provided the necessary information, we have accepted your request. It will be processed in accordance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, and the Privacy Act of 1974, 5 U.S.C. § 552a. Unless you object, we will search for CIA-originated records existing through the date of this acceptance letter. We will not charge fees.

The large number of FOIA requests CIA receives has created unavoidable processing delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel. A more practical approach would permit us to continue processing your request and respond to you as soon as we can. You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish. We will proceed on that basis unless you tell us otherwise.

Sincerely,

Chris K.

for Scott Koch
Information and Privacy Coordinator


GOVERNMENT EXHIBIT D

MORI DocID: 1284797



Central Intelligence Agency

Washington, D.C. 20505

31 January 2006

Mr. Buony B. Roum
3336 Mt. Pleasant NW #5
Washington, D.C. 20010

Reference: P-2006-00109

Dear Mr. Roum:

    This letter is a final response to your 11 November 2005 request for information about you. We processed your request under the Freedom of Information Act and the Privacy Act. We searched for CIA-originated records existing through the date of our 20 January 2006 letter accepting your request.

    We were unable to identify any information or records filed under your name.

    Our searches were thorough and diligent, and it is highly unlikely that another effort would change the result. Nevertheless, you have the legal right to appeal our inability to find relevant records. You may address your appeal to the Agency Release Panel, in my care, within 45 days of the date of this letter. Please explain the basis of your appeal.

    We appreciate your continued patience and understanding while we processed your request.

Sincerely,

Chris K.

Scott Koch
Information and Privacy Coordinator

GOVERNMENT EXHIBIT
E